# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MEGAN BROOKE WEEKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-188-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Megan Brooke Weeks requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on July 10, 1995, and was nineteen years old at the time of the administrative hearing (Tr. 177, 181). She has a high school education, some college, and no past relevant work (Tr. 25, 38-39). The claimant alleges that she has been unable to work since April 8, 2013, due to a blood clotting disorder, blood clots in her brain, migraine headaches, seizures, and mini-strokes (Tr. 218).

**Procedural History**

On May 14, 2013, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security insurance payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85 (Tr. 177-86). Her applications were denied. ALJ James Bentley conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated January 7, 2015 (Tr. 10-27). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") perform work at all exertional levels, but must avoid working at unprotected heights or around dangerous moving machinery, and was unable to climb ropes, ladders, or scaffolds (Tr. 23). The ALJ concluded that the claimant was not disabled because there was work that she could perform in the national economy, *e. g.*, office helper, sales attendant, and furniture rental clerk (Tr. 26-27).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) evaluate the opinion of treating physician Dr. David Lee Gordon, and (ii) discuss the vocational expert's testimony regarding accommodation requirements for individuals who have suffered a seizure at work. The Court agrees with the claimant's first contention, and the decision of the Commissioner must therefore be reversed.

The ALJ found that the claimant had the severe impairments of seizure disorder and migraine headaches (Tr. 15, 22). The record reveals that the claimant began experiencing headaches shortly after giving birth to her daughter in April 2013 (Tr. 365, 667-718). She presented to the McAlester Regional Health Center Emergency Room ("MRHC") on April 8, 2013, and was diagnosed with a post-epidural headache (Tr. 667-79). The claimant returned two days later and reported headache, neck pain, bilateral shoulder pain, twitching in her left eye, bilateral leg numbness, and a change in vision (Tr. 683-96). A nurse noted that the claimant would follow commands, but could not

speak, and had a blank stare upon admission (Tr. 683). A CT scan of the claimant's brain revealed venous thrombosis (Tr. 691). Thereafter, the claimant was transferred to OU Medical Center where she received inpatient care for five days (Tr. 329-68). In a discharge summary on April 15, 2013, Dr. Gordon diagnosed the claimant with, *inter alia,* cerebral vein thrombosis ("CVT") due to postpartum state and likely underlying primary hypercoagulable state; complex partial seizures secondary to CVT; migraine headache with aura-visual, sensory, and vertigo; and abdominal and precordial migraine (Tr. 365-68). At a follow-up appointment with Dr. Gordon on July 11, 2013, he noted the claimant had a seizure shortly after her April 2013 discharge, but had not experienced any additional seizures since then, and that her headaches were much improved (Tr. 822). Dr. Gordon's treatment notes dated October 8, 2013, reflect that the claimant experienced seizures in August and September 2013 (Tr. 808). Dr. Gordon also noted that an MRI of her brain dated September 16, 2013, showed definite improvement, but that a small residual lesion remained that may explain her persistent seizures, and that the claimant had not had any migraines since her July 2013 visit (Tr. 809). At a follow-up appointment on November 3, 2014, Dr. Gordon noted the claimant had a seizure on January 13, 2014; he released the claimant to drive on July 15, 2014, because she had been seizure free for six months; she remained seizure free through the date of his exam; and that her seizures were well controlled with medication (Tr. 849-50). As to her migraines, Dr. Gordon noted the claimant experienced them every one or two weeks, which was an improvement from three times per week, and that they were well controlled (Tr. 850). The same day, Dr. Gordon completed a Medical Source Statement ("MSS")

wherein he opined, *inter alia*, that the claimant's impairments would cause her to take unscheduled breaks during an eight-hour workday,[3] miss work about two days per month, and require more supervision than an unimpaired worker (Tr. 835-36, 840, 845-46). Additionally, Dr. Gordon opined that the claimant could lift/carry ten pounds frequently, twenty pounds occasionally, and fifty pounds rarely (Tr. 840). He further indicated the claimant could not work at heights or with power machines that require an alert operator, could not operate a motor vehicle, but could tolerate moderate work stress, and could attend employment on a sustained basis (Tr. 845).

On August 7, 2013, Dr. Adel Malati performed a consultative physical examination (Tr. 376-82). Dr. Malati noted the claimant walked in and out of the office without an assistive device; had a nice, normal, steady gait; could sit, stand, and lie down without difficulty; had full range of motion in her neck, shoulders elbows, wrists, hands, back, hips, knees, and ankles; had full grip strength bilaterally; and was able to do heel walking and toe walking without difficulty (Tr. 378). He assessed the claimant with CVT, seizure disorder secondary to transient ischemic attack, and history of transient ischemic attack (Tr. 378).

A state reviewing physician identified only as "LMW, MD 19" completed a Physical Residual Functional Capacity Assessment on December 5, 2013, and indicated that the claimant could perform the full range of work at all exertional levels, but should

---

[3] Dr. Gordon specified how often he believed the claimant would require unscheduled breaks, but his handwriting is open to different interpretations (Tr. 840, 846). The claimant asserts the MSS indicates that she needs unscheduled breaks four times per day, while the government asserts it means she needs an unscheduled break less than one time per day or "rarely." Because the ALJ ignored this portion of Dr. Gordon's opinion entirely and the Court finds remand is required for other reasons, the Court need not attempt to decipher it at this time.

never climb ladders, ropes or scaffolds, and should avoid unprotected heights and operating hazardous machinery due to seizure activity (Tr. 94-96).

At the administrative hearing, the claimant testified that she experienced a seizure a few days prior to her hearing date, which was the first seizure she had since January 2014, and was again prohibited from driving until she was seizure free for six months (Tr. 39-41). As to her migraines, she stated that her medication was somewhat effective, but that she still experienced migraines three or four times per week (Tr. 41, 45). If she experiences a migraine at school, the claimant testified that she lies down in a nearby room with the lights off or in her vehicle during a break between her classes (Tr. 45). As to her class attendance, the claimant stated that she had missed eight days of school as of the time of the hearing (Tr. 46). Additionally, the claimant testified that she cares for her child when she is at home, but is unable to hold her child unless someone else is present (Tr. 47-48).

Medical opinions of a treating physician such as Dr. Gordon are entitled to controlling weight if "'well-supported by medically acceptable clinical and laboratory diagnostic techniques [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. §§ 404.1527, 416.927. *Id.* at 1119. The factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the

treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ rejects a treating physician's opinion entirely, he must "give specific, legitimate reasons for doing so." *Id.* at 1301. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

In his written opinion, the ALJ attributed some weight to Dr. Gordon's MSS opinion overall, but assigned little weight to his opinion that the claimant would be absent from work two days per month, finding it was "over speculative" in light of the claimant's infrequent seizures and well-controlled migraines (Tr. 25). The ALJ then gave great weight to the State agency physician's opinion because it was consistent with the medical record as a whole (Tr. 25).

The ALJ erred in his analysis of Dr. Gordon's opinion for several reasons. First, the ALJ failed to analyze Dr. Gordon's opinion in accordance with the *Watkins* factors outlined above. *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§ ] 404.1527.'"), *quoting Watkins,* 350 F.3d at 1300. Although the ALJ referenced the correct analysis at

the beginning of step four, he did not mention or discuss any of the factors when analyzing Dr. Gordon's opinion. This analysis was particularly important here because Dr. Gordon was the only treating physician in the record, and the only medical source who opined as to any specific limitations.

Additionally, the ALJ adopted Dr. Gordon's findings as to the claimant's ability to work at heights and operate dangerous machinery, but rejected without explanation his limitations regarding the claimant's exertional ability, need for more supervision than an unimpaired worker, as well as her need for unscheduled breaks during the work day; and further overlooked that the claimant experienced migraines at least once every week or two *with* medication when rejecting Dr. Gordon's opinion that she would be absent from work about two days per month (Tr. 25, 836, 840, 846, 850). It was error for the ALJ to "pick and choose" in this way, *i. e.*, to cite findings supportive of his own determination while disregarding unsupportive findings. *See, e. g., Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). In addition to evaluating Dr. Gordon's findings according to the appropriate standards and indicating what weight he was assigning to them, the ALJ should have explained why he found certain aspects of Dr. Gordon's findings persuasive but not others. *See Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) ("[T]he ALJ should have explained why he rejected four of the moderate restrictions on Dr. Rawlings' RFC assessment while appearing to adopt the others. An ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a

finding of nondisability. . . . [T]he ALJ did not state that any evidence conflicted with Dr. Rawlings' opinion or mental RFC assessment. So it is simply unexplained why the ALJ adopted some of Dr. Rawlings' restrictions but not others.").

Because the ALJ failed to properly evaluate the medical evidence, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis. If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED, and the case is REMANDED for further proceedings consistent with this Opinion and Order.

**DATED** this 25th day of September, 2017.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**